OK, Mr. Pesnell? Yes, sir. Whenever you're ready. Good morning, judges. Good morning. My name is Whitney Pesnell.  I'm with the Federal Law Firm of PLC. You have to talk up a little, Counselor. Just a little louder. Certainly. Sorry. We represent the plaintiffs and the appellants in this matter, Cynthia Sue Mary, Paul Mary, and Paul's Land Company, LLC. The defendant in the appeal is QEP Energy Company. This case arises out of QEP's deliberate and intentional construction, operation, and use of two sets of pipelines. Pesnell, let me start off by trying to find out what's left in this case before us. First, you filed your suit in state court. Yes. And I read your complaint. As I read it, you only sued for encroachment of the Pedro Pipeline in your initial suit. Do you disagree with that? I'm not sure about that, Judge. Well, you can check me when you come back up on rebuttal. Assuming for the time being that, I mean, I read the complaint. All I see is for encroachment of the Pedro Pipeline. So, the same thing is true for the claim for rental value of the line and for mental language. Those are not included in your state court complaint that was originally filed. Well, Judge, those may or may not have been included in the original complaint in state court. Okay. Well, that's all I'm trying to establish. No, no. But the case was removed to federal court, and I'm pretty sure the pleadings were amended. Now, we didn't have all of the facts. Over the period of time that the suit was pending, additional matters were learned, pleadings were amended, claims were added. I don't remember seeing an amended complaint in federal court. Perhaps not. I'm not sure. Okay. Now, then you had a, the court ruled that you had a motion for summary judgment, and the court dismissed your encroachment of profits and your claim for removal of the pipeline. Those are the two claims that he dismissed. Yes, sir. I don't think we had asked for removal of the pipeline. I think we had asked for the court to recognize that we owned the pipeline because it was constructed on our property. Well, in your complaint, you, following the code article, you asked for removal of the pipeline. The code article gives the property owner the right to make an election, and one of the options is to demand its removal. That's correct. Okay. So, those are the, then after that, there was a settlement. And you settled all claims involving any kind of damage to the plaintiff's property, subterranean or otherwise, except for the two issues that the district court dismissed. Right? Well, yeah, except for claims for the recognition that the mayor has owned the portions of the pipelines in question and are entitled to disgorgement of the profits or the reasonable rental value of the pipelines in question. The reason for that, Judge, those were the issues that Judge Hicks ruled on in the motion for summary judgment that was appealed here the first time. The other claims at issue in the suit that I'm aware of were claims for damages to the surface of the property because of erosion at the well pad and severe erosion along the road that had been constructed on the Mary's property, the access road. And then, in addition, there were claims for damages because QEP used the road on the Mary's property to drill and complete the Pedro well. That may have been a claim somewhere, but it wasn't in your complaint. Again, Judge, I . . . And the two things that you reserved of what I just said, you reserved the right to make a claim on the two claims that the district court dismissed. And you settled everything else. We reserved the right to pursue an appeal on and all of the claims that were decided or adjudicated by Judge Hicks. That were dismissed. That's correct. That were addressed in his summary judgment. All right. Now, the case came up to the first panel. And they, after amending their original opinion, they remanded the case. And in the remand order, what they asked the district court to do was decide whether disengagement of profits was a viable claim. And to review the court articles and decide whether that was a viable claim. Yeah, after . . . The district court kind of lumped all the causes of action together, accession, trespass, and breach of contract. And this court remanded with instructions to . . . It felt it had applied the wrong standard, and it clearly did the first time. But remanded with instructions to look at each of the causes of action separately, and in particular, the issue of bad faith in connection with each of the causes of action. Right. And whether under any of those causes of action, the plaintiff had a right to recover discordant amount of profits. Yes. Okay. Now, the remand order says nothing about removal of the pipeline. The remand order did not? That's correct. Is that right? Yes, sir. To my knowledge. Okay. And you didn't . . . The defendant filed a motion for reconsideration, but you didn't file a motion for reconsideration to ask the court to also include the removal of the pipeline. No, sir. I don't think we're . . . I mean, that was an option. I don't think that's what we're seeking. When this matter went back to the district court . . . No, I'm just asking you now whether you filed anything asking the court to reconsider to the extent that it didn't rule on the removal of the pipeline. No, sir. We asked the court to recognize that we own the pertinent portions of the pipeline . . . Okay. . . . and consequently are entitled to the profits that they made using our land and our pipeline. All right. So then after the case was remanded, the judge considered different causes of action and found that under none of those causes of action, you were the plaintiff entitled to damages for, quote, for profits, disagreed profits. That's what the district court found and held. Yes, sir. Okay. And you filed a motion for summary judgment after it went back. We filed . . . The defendants at the district judge's direction re-urged their motion for summary judgment. Now I was under the impression when this court remanded this matter that it was because it thought there might be a need for additional evidence or factual development or submission. And you did specifically tell the district court to reanalyze the causes of action separately and looking at bad faith and what that meant in connection with each of those causes of action. Okay. Now, when you filed your motion for summary judgment in the district court, you didn't ask the court to consider removal of the pipeline? I don't believe. Okay. Okay. Well, so I'm left with the notion that the only issue before us is whether under any of the causes of action you have a claim for discordant of profits because all the others for one reason or another have fallen out of the wayside. Well, I think that's correct, Judge, with the caveat that we also have a claim for ownership of the pertinent portions of the pipeline and discordant of the profits in connection with the Mary well. Well, that was not sued on. You didn't claim . . . I'm sorry. I didn't mean to interrupt you. No, you didn't include that in your complaint. I believe we did. But the federal courts used . . . Check it when you come back. The federal courts used notice pleading. We did not expressly or specifically ask for that in the complaint. But you don't have to expressly or specifically ask for that. It's notice pleading. We did plead that they constructed a portion of the pipeline serving the Mary wells on the Mary's property outside the servitudes that they requested and the Mary's granted for those pipelines. Well, it's notice pleading, but we're talking about the relief that you seek. So in this case, are you . . . I don't mean to go back through something that Davis has already asked you, but are you disavowing an interest in the removal of the pipeline remedy? I mean, we're talking about remedies here. Is that still on the table? That's something you're . . . Yes, sir. I don't think anybody wants to have the pipelines removed. They're already there. If they're removed, they're going to have to build new pipelines. So you want ownership and you want discordant? We want the ownership of the portions that were constructed outside the servitude on the Mary's property, and we want the profits that we're entitled to, the profits that they generated by using Mary's portions of the pipeline to transport, market, and sell the gas. What other remedies do you think are still at issue for this panel to consider? Anything else? No, sir. I don't believe. I think those are the claims that are still here. Now, it's true that we did not specifically pray for the relief in connection with the Mary well, but again, it's known as pleading. In addition to that, in federal court, like in state court, you plead the facts to give notice of the claim. You're entitled to any relief that is proper under the law, whether it is specifically or expressly prayed for or not. And the claims in connection with the Mary wells, the portions of the pipelines and the revenues, are identical to the ones on the Pedro wells. They were not the specific focus of the defendant's motion and weren't specifically discussed by the defendants or the lower court in their opinions, but they're the same claims. Portions of the pipeline were built off of servitude. They were a trespass, among other things. And because of that, we're entitled to relief in connection with those transactions, occurrences, and events. Any relief that's proper under the law, we believe that extends to and includes distortion of profits, just as it does with respect to the pipelines that were built to serve . . . Talk to me about distortion of profits. Okay. You know, the district court said the oil that's being transported through the pipeline are not fruits. And so, the fruits article, which talks about distortion of profits, doesn't apply. Now, you know, to be completely fair, there's two Louisiana Supreme Court cases that I think give you some support. I mean, I don't . . . I'm not . . . You know, and I think your best case is the Corbella case. I don't disagree with that, Judge. In addition, there are two United States district courts, here in the district courts of Louisiana, that also support that. The Erker decision, which we cited to the court in our briefs, and the Williams and Land Company case. We did cite the court to that case in our original brief. That was . . . But the citation that we gave was the citation to the magistrate judge's opinion. In that case, it does support us. But after the magistrate's initial opinion, Judge Lividay of the Eastern District of Louisiana rendered an opinion. And that one addresses the very issues that are before the court in this case and disposes of them all, including entitlement to disgorgement of profits under each of the theories advanced. The citation to Judge Lividay's opinion is 2003 Westlaw 21355, 417. We have some additional . . . Now, in the Corbella case, Shell had a terminal, had a lease from the planter. Yes, sir. Put a terminal on the planter's property. Yes, sir. Lease terminated, and Shell refused to move off. Yes. So they maintained their terminal on the property. Yes. And the Louisiana Supreme Court said that they were entitled to get the profits from Shell for the . . . Continuing trespass. For the time that they held over. And I think there was maybe a little time that they gave them a . . . They were trying to renegotiate the lease. The renegotiations failed. They gave the award to them from that point forward because at that point, they became a trespasser. That's correct. Now, let me go back to the disgorgement of profits that you asked about, Judge. First of all, the district court here is a matter of law when it failed to grant our motion for partial summary judgment. It is absolutely undisputed in this case that the Marys owned the property in question. It is undisputed that QEP constructed these pipelines over portions of the Marys' property over which they had no right to do so. They were clearly outside the servitude that QEP asked for and that the Marys granted to them. Because of that, under the articles on accession and the Louisiana Civil Code, when the portions of the pipelines were constructed on the Marys' property outside the servitude, those portions of the pipeline became the property of the owner of the land. I'm going to ask you one more question that relates to the Corbella case. What the court ordered disgorgement for was for the time that Shell occupied the property. That was a violation of their property right. Yes. Now here, whatever profits QEP made off of the pipeline that's related to the violation would be the profit they made for the 30-foot detour or whatever it was from the pipeline. In other words, it seems to me Corbella stands for the proposition that you may get disgorgement of profits that relate to the violation and here the violation is the encroachment on the plaintiff's property and that's Have you found a case that gives any more profit than that resulted from the violation itself? Well, Judge, the cases that we've cited the Supreme Court's decisions in Rosenthal and Corbella and the District Court of Louisiana decisions in Urker and Williamthal support that but the main thing is accession. In this case because the pipelines became the property of the Marys they were not entitled to use those pipelines to transport or get their oil and gas to market and sell it without the Marys' knowledge, permission, and consent. They never requested it. They never obtained it. Do you want to use up your rebuttal time or do you want to get it? I would like to, I guess, judge because I haven't really been able to make much of my argument. No, no, no. That's how it works. I'm just saying you can actually use your rebuttal time but I think you've presented your principle argument and you do have rebuttal. So we'll hear from opposing counsel. Thank you. Very well. Mr. Atkins. Good morning, Your Honors. Paul Atkins with Lisco and Lewis and Baton Rouge. We represent QEP Energy and let me extend my appreciation for just the opportunity to argue in front of this court. It's always a privilege to come to this court. I felt like, listening to the panel's questions to Mr. Pesnell, that Judge Davis may have taken a peek at my argument because the first things I wanted to address are the first things that he asked Mr. Pesnell about and I'm not going to spend a lot of time on that because I think the court follows that but I think it's very important to make sure that we focus on what is actually before the court today because in their briefs the plaintiffs made a bunch of arguments. They talked about some new claims. They talked about, quote, other remedies. They talked about civil profits, rental values. All of that appeared at various places in their briefs. None of those are properly before the court. I think it came out but let me be sure that we're on the same page there. The plaintiffs did articulate a number of damage claims when they filed their original petition I think it was some eight years ago and then we removed it to state court. Discovery progressed. We tried to resolve some of the damage claims but the one impasse we really had was on the disgorgement of profits claims. Removal has been conceded today. It's not what they're looking for. I don't think any issue has ever been raised about removal of jurisdiction. Off the table. You're right, Judge. There was never an amended petition in this case. Some of the claims that they pursued morphed a little bit from exactly what they had pled but there was never a formal amendment. The claim that always stood out to us was the disgorgement of profits. We never thought that was an appropriate remedy a viable remedy for what had happened in this case and so on behalf of QEP we filed a motion for partial summary judgment and it was very targeted. It was only directed at the disgorgement of profits claim and the claim about the entitlement under the civil code article on accession to make an election of remedies as to whether to require the removal of the pipeline or to become the owners of it. So that was it. Everything else was still viable at that point. The district court as you're aware ruled in 2017 granted our motion for summary judgment found that they weren't entitled to disgorgement of profits and also did not require removal of the pipelines. Within a few months of that we settled everything else. We entered into a settlement agreement it was actually in the record I think as part of our submission in this case because they continued I felt like to raise some new claims that had been resolved. The only thing that the district court ruled on was the disgorgement and the election of remedies and that's what they reserved. We settled every other claim they had in language as broad as I could figure out a way to write it and so all of those claims were gone and they pursued, as we contemplated they would, the appeal to this court but it was only the disgorgement of profits and the election of remedies. The prior panel issued their opinion and said Judge Hicks didn't follow didn't necessarily say he was wrong but they said the SGC case which I think was his own district court case did not apply the proper methodology sent it back for an analysis of that. But Judge Davis you're right the only thing they sent it back on was the disgorgement of profits. The prior panel's opinion did not say anything about the election of remedies. So to my understanding of the court's rules unless they filed a petition for rehearing like we did and they did not the election of remedies claim was gone. So the only thing that's before the court today all we need to be talking about is disgorgement of profits. Let me ask you this, does the mandate rule cover issues that were not decided? Well I think the court's mandate in this case was very specific. I know it was but does it does it cover issues that the panel did not decide? I think when the court remands it under a specific mandate certainly the court in its mandate did not say everything's wide open and you can file a whole new motion for summary judgment. They didn't say that. They said remand it for a specific finding on these issues. So by not addressing anything else at least implicitly yes I think everything else is gone. But even if it weren't everything else was settled. The district court and the district court found that in its most recent memorandum ruling as well when the plaintiffs tried to assert some claims beyond what the mandate covered the district court looked at the settlement agreement and said all those claims are gone. All we've got is disgorgement of profits. That's the only thing before the court. What's the significance of the fact that the plaintiff as I understand it did not raise removal of the pipeline in his motion for summary judgment after the remand in the district court? I think it's waived. I think the rules of this court are clear that you had the opportunity Mr. Pesno talked about pleadings because this is not a pleading issue this is a summary judgment issue. You had the opportunity to raise and assert whatever you thought was still viable and they didn't. The court has granted summary judgment on the only claims. If they wanted to presume some other claims or thought they had been exempted from the terms of the settlement agreement perhaps that was the opportunity to raise them. I don't think they existed because all the other claims had already been dismissed as a result of the settlement. I don't see any scenario where the plaintiffs either when the case was remanded or if this court would remand the case again all those claims are still gone. They didn't raise them previously and of course I know part of the reason for the mandate and I think we cited something in our brief is that you don't want to keep hearing these issues again. It's not a trial and error. You raise everything bring it to the court of appeal we'll either decide the case or send it back to the district court and in this case we sent it back to the district court on a very narrow issue but I think that was the only viable issue that the plaintiffs can argue is their disgorgement of profit claims and I think that's what's before the court today. Talking about disgorgement I want to go through the district court analysis in just a second but I like to step back and take the 30,000 foot view of the disgorgement claim. It's an extraordinary remedy. My practice is mostly oil and gas. I've never seen a disgorgement claim in the context of oil and gas cases. I'm sure this court has seen them because it considers a much broader variety of cases than what my practice involves. I think Corbello was one in the Louisiana Supreme Court. And I want to talk about Corbello in just a second. But disgorgement is typically in antitrust cases or trademark infringement or patent infringement cases and I think there's a couple of reasons for that. One, they want to disturb that kind of conduct but an additional reason is the difficulty of proof. If somebody steals your patent idea and builds something and sells it and makes millions of dollars how can you ever prove that if you hadn't taken that I would have made that millions of dollars. The burden of proof is almost impossible. So the statutes give a statutory remedy for disgorgement of profits. The other rationale behind that is that you took something that belonged to the plaintiff. It was his idea. It was his patent. It was his trademark. And so you shouldn't profit from that so therefore you have to disgorge those profits. Let's talk about the line of cases Judge Davis, that you talked about and I think those are all pertinent and we've addressed all of those in our break. I think you've got to look at the three cases together and that's the Rosenthal case which is a 1926 Louisiana Supreme Court case. Corbello cites that we need to talk about Corbello I don't know if it's act or art or how you say it but it was the same case Mr. Pesnet was referring to. First of all, the Rosenthal case not a case that has much factual application today but the legal precepts are still valid. It was a case involving truly accession. Someone who had no right to trap animals on the landowner's land went on there, trapped the animals sold them for their fur. When a party who actually derived the rights from the landowner and did have the right to go on and trap the land realized that, they sued. So the court analyzed that under accession articles talking about fruits and so forth and in doing that they found you didn't have the right to be there but this person had, I think it was a lease I don't remember the exact nature of the right but the person who had the right to trap  that were entitled to the fruits of that land the animals and therefore you owe an accounting to him. In doing that they used pure accession articles and they said the fruits belong to the owner of the land the animals don't belong to the owner of the land but they're a fruit of the land so the landowner had the right to those fruits and he gave you that right, not this other party so you have to account to him and reimburse him for those fruits. When they did that they talked in terms of profits but the reason they used the term profit is because the code articles that talk about good faith and bad faith possessors those articles allow even the bad faith possessor to recover his expenses and so rather than just say you owe the net revenues the Supreme Court in Rosenthal talked in terms of profits because it was the amount you sold less your expenses and they did an accounting in there that was very clear that they were allowing his expenses and so what you're entitled to is the profits and I guess net profit would be another way to put it but I think they just used profits so when they used profits in Rosenthal they were talking in terms of accession and they were really equating profits to fruits because in that case they couldn't return the fruits, the animals were sold and I assume had been killed for their fur so all you could get was the profits so in that case civil profits or civil fruits were the profits. When you get to Corbello they picked up that language from Rosenthal but they didn't go through the analysis that this court would have directed us to do in the remand. In Corbello it was a trespass case. It wasn't really a fruits case so to me the reliance on Rosenthal is really inappropriate because it's an accession case but nevertheless in Corbello of course that's the famous legacy case and that was what the 90% of the court's opinion focused on but there was a single page in there that did talk about trespass and Judge Davis I think you brought it out, you were correct the primary difference in Corbello in this case is that Shell had an oil terminal on the plaintiff's land. After the lease expired they stayed there, continued to operate the oil terminal so it was clear they didn't have any legal right to be there. The court did not go into much analysis about how the damages should be calculated. I don't think they used the term disgorgement but they did say that the court of appeal was not wrong on relying on Rosenthal for the concept that because it was because they occupied the land without the right to do so they owed them the profits. They didn't really go into much discussion about what those profits were but again as you pointed out Judge Davis the big distinction between that case and this case is the mayors are not seeking the profits from their land. They're royalty owners, they're getting paid for the oil and gas that's produced on their land. They're seeking money from their next door neighbor's lands and there's nothing in Corbello or Rosenthal that supports such a result. To the extent that profits and if you want to call it disgorgement you can call it that. I'm not sure that's appropriate but it's a fair measure of damages because it's a damage associated with your use of the land and your deprivation of the right to use your own land. I think of it in terms of rental. I don't know if that was the analysis that the trial court used in Corbello because they didn't really explain it. The Supreme Court remanded the case didn't it? They did. To calculate what the profits would be so I mean they did. It seems like it's hard to say that they didn't authorize an award of profits. You know I can't disagree with that and they said you weren't wrong in relying on Rosenthal as the basis for calculating those profits but again in Rosenthal and in Corbello it was the profits from your own land. That's not what the plaintiffs are seeking here. If you go back and look at their petition and it's paragraph 22 of the petition they clearly articulate their disgorgement claim and it's for all of the oil and gas that ran through the pipelines outside the well not outside the service area. They want a disgorgement of all the oil and gas, I think it was only gas, that ran through the pipeline serving the Pedro well. There was a diagram in the record and the court could see it. The Pedro well is located over here. There's a pretty short segment about 150 feet of pipeline that goes from the Pedro well and connects to a pipeline on the Mary's well that we clearly had the right to use. So it's a fairly short segment and only 31 feet of that got outside of the servitude and by the way we don't know how that happened. I think the record is pretty clear that we did some detailed discovery. QEP said look we always have a surveyor go out there and mark where the right of way is and then we have a third party contractor go out there and do it. We tried to depose all of those people but that was back during the Hainesville Shale boom days. Nobody had a recollection of, you know, none of the contractors could say why they cut the corner on that pipeline and got outside of it. But you're correct Judge Davis. I think it was only 31 feet on the gas pipeline and 11 feet on the saltwater pipeline. So to the extent there's any claim for disgorgement it's certainly only to the extent that there's profit associated, if any, with the oil or the gas that ran on the 31 feet and the 11 feet. The third case was the Acura case. That case I would submit to the court did not do what this court told us to do in this case. The Acura case similar to what the plaintiffs did in this case had a variety of claims. One of the claims was an accession. So the court went through the accession analysis to determine if Placid, they were the company that didn't have the right to be on the land, if they were in bad faith. Well it turned out Placid had gotten a lease or a right of way from somebody that owned no title. I think they were the timber lessees. It was a timber management company, but Placid took their lease from them. They didn't have any right to grant a pipeline right of way or pipeline certitude, so they had no contract whatsoever with the owner. So the court said, look, you knew or you certainly should have known if you had gone to the assessor's office or to the clerk of court's office, it was clear that the people you got a lease from didn't have the rights to grant you a lease, therefore you were in bad faith. But that was for purposes of accession and acquisitive prescription, because Placid claimed we have acquisitively prescribed the pipeline rights. So the court said you're in bad faith under the standard applicable to accession and acquisitive prescription. But the court then in the next part of its opinion said but plan if you don't have a claim in accession, because Placid sold the pipeline a couple of years ago and that party, the party that now owns it, is not in this suit, so you don't have a claim in accession. They then turned to the trespass claim and rather than do what the prior panel told us to do and go back and basically start over, okay, now we're not in accession, now we're in tort. What is the standard of conduct for tort? Does tort provide a remedy for distortion of profits? The court didn't do that. They just imported the bad faith finding under the accession analysis into its trespass analysis and said, well, we've already determined you're in bad faith, therefore you're a bad faith possessor and you have to reimburse... But in the case of Corbello, it did the same thing, though, didn't it? It did. It did. Frankly, I think that part of Corbello and that part of Aker were both wrongly decided because they... No, we can't say that about what the Louisiana Supreme Court... I agree, Your Honor, but at least in Corbello, you've got the distinction that it was profits associated with the use of the plaintiff's land or profits derived from the terminal that was on their land. That's not what you have here. You've got the plaintiffs asking for profits. Think about what the plaintiffs are really claiming. You drill a gas well on my next-door neighbor's property. You ask us for a right-of-way or a servitude so that we can transport that oil across our property. We gave you that. For some reasons that I'm not sure we'll ever know, somebody and it wasn't QEP because they had a third-party contractor, but we're responsible for their actions, but the third-party contractor cuts the corner on that pipeline and doesn't follow exactly the survey that they should have followed. I've missed it by 31 feet in one case and 11 feet on the other. The plaintiff's claim is we get all that. I don't know how much money it is. We never got to that issue in this case, but all the gas that was produced from this well because you cut the corner by 31 feet, we're entitled to that. Of course, the reason they're making that claim is because they could not articulate any other kind of damage claim. We deposed them at length. Neither one of the plaintiffs have been on that property in 50 years. It's remote timberland. They told me they couldn't find it if you put them in a car and pointed them in that direction. It's under a road that we have the right to be there for, so it's not interfering with any use of their land. Apparently they knew that, and that's the reason they asserted this disgorgement of profits claim. I don't want to skip this. The analysis, I think, in our brief is fairly clear. If you do what this court told us to do and look at the articles of accession just like the district court did, he said there's no disgorgement remedy in accession. Your right is to have the pipelines removed or you can make an election to keep them, but there's nothing that says disgorgement. Same thing in breach of contract and tort. The remedies are similar. The whole concept behind damage remedies in both tort and contract, and we cited several Supreme Court cases to that effect, is to put the plaintiffs back in the position that they would have been in if none of this had happened. Okay, well if we apply a corbella about the way you kind of have to read it, in a case where there's a violation of the right of the landowner to occupy his property, it's possible to get an award of disgorgement of profits for the violation. Now, the district court said that the violation here was a 30-foot and 11-feet detour, and at most they could recover the additional profit they had for the use of the 30 feet and the 11 feet. So, what do you think of that? And that's kind of consistent with what the Louisiana Treatise says. It is, Your Honor, and the evidence, I think it was in Elena Slaby's affidavit, is what the court was referring to. I think that's at the record at page 565 of the record, but we cited that. She testified there were no additional profit made. We didn't save any money by cutting the corner. That didn't generate any more gas coming through the pipeline. There was no additional profit. If the plaintiffs had made a claim for, they actually made a claim for rentals, we probably should have and would have owed them additional money for taking property beyond the servitude, but they abandoned that claim, and that claim was part of what was settled. Thank you, Counselor. My time's up. Thank you, Your Honor. Judge Nelson? Yes, sir. I don't have much time, so I'm going to try to go fast. First of all, Judge, we didn't have claims for the original petition because we didn't discover that the pipelines serving the Merriwell were off the servitude, outside the servitude, until two or three years after this suit was filed. We didn't learn that until they sent a surveyor out to mark the pipelines, and we could see that they were not on the servitude that was requested and that was granted. We didn't file a formal amended petition, but we pointed out those facts and made those claims in opposition to the defendant's motion for summary judgment, and in connection with our motion for partial summary judgment, and under the jurisprudence of this court, as we point out in our brief, those should have been treated as amendments to the pleadings by the district court and by this court, and they should be there, and we should be able to collect on them. Second, there are issues, the main issues that this court asked the district court to focus on were the issues of bad faith, because that's what's most important to determining whether or not we're entitled to ownership of the pipelines and disgorgement of profits. Under the accession articles of the Louisiana Civil Code, a defendant is in bad faith if he does not have an act translative of title that authorizes him to go on the land and do what he did. It is undisputed that QEP did not have an act translative of title or any act of any kind that authorized it to go on these portions of the Mary's property and construct those pipelines across those portions of the Mary's property. That's under Article 487 of the Louisiana Civil Code. That's bad faith, and that means we're entitled to all profits that they made using our land and our pipeline to transport the oil and gas. You can't divide it by the length of the pipeline. If you can't use the 30 feet or the 16 feet, it don't matter. You still can't get anywhere or do anything with it. But what about his final point? Just evidentiary. What's the logic that there were any additional profits from the shortcut? It doesn't matter. That's a red herring. The district court threw out several red herrings. It said the accession articles don't apply and we can't get disgorgement of the accession articles because oil and gas are not fruits. That's true. We don't agree. We don't argue with that. Oil and gas are products, not fruits. The district court said the accession articles don't apply because the Pedro wells are located on an adjacent tract, not on the Mary's property. We don't argue with that. We're not claiming the oil and gas. We're not claiming that it's fruit. What we're claiming are the profits that they made by the use of our land and our pipelines to get it to market. They can produce all the oil and gas in the world that they want to on their tract of land, but if they can't get it anywhere or transport it or sell it, they ain't got nothing. They only got that by trespassing on and using our land and our pipelines. When those pipelines were constructed, they belonged to the Mary's. So we're entitled to all of that. That is a simple, direct application of the articles of the Louisiana Civil Code on accession. That's article 497 and also article But on or above the same amount of profits that they would have had had they not done the shortcut? Where in the record does it disprove the factual finding that there were no more profits? First of all, the plaintiffs submitted two affidavits, affidavits which were erroneously stricken, by the way, by the district court, which established that they saved a substantial amount of money on construction costs for the pipeline by cutting off the corner, as the district court said. They saved construction costs, but where did they get profits from the oil? As far as I know, they didn't. It's irrelevant. It doesn't matter for purposes of the accession articles. They're still not entitled to use the pipeline or to profit from its use. And the district court suggested that if there were a disgorgement, that that might be excessive damages or punitive damages or that's all ridiculous. It's restitution. It's restitution for the illegal seizure, distraint, and use of the Mary's property and the Mary's pipeline. They didn't have any right to do it if you don't make and pay restitution and defendants can profit from seizing and using other people's property whenever they want to, then you're giving them an economic incentive to trespass. If you don't remove that economic incentive, then you've got problems. Let me just ask you one quick question. If we decide that the only profits at most you'd be entitled to would be the additional profit that the oil company made because of the detour of the 30 feet and the 11 feet, do you have any kind of damage model that you could tell me would be able to compute that? Construction costs, I don't know how they could make additional profits from that. As I said, I think that's a red herring. Now, they want to tell you that this was only a moderate deviation or it didn't amount to much and it was inadvertent or negligent. That's absolutely not true. The preservative that they purchased when Mary sold them for the Pedro Wells ran due north to the pipelines on Mary's property and then due east to a point where it could be connected to the pipelines on Mary's property. They didn't even try to follow that servitude. It's a 60 foot wide servitude and that's why he comes up with these small numbers. But they didn't try to follow the center line of that servitude. They cut across the hypotenuse of the triangle. They weren't even trying to utilize or stay on the servitude they asked for and were granted. That's bad faith. Thank you, Counsel. The case is adjourned.